# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6288 | **DATE** | November 26, 2003 |
| **CASE TITLE** | BUXTON vs. EQUIFAX CREDIT INFORMATION SVCS et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendant Providian National Bank's motion for summary judgment is granted. This action is dismissed in its entirety. Any pending motions are moot.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| ✓ | Notified counsel by telephone. | DEC 01 2003 date docketed | |
| | Docketing to mail notices. | | 58 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| JS6 | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | ) | |
|---|---|---|
| Eva Buxton, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02 C 6288 |
| | ) | |
| Equifax Credit Information Services, Inc., | ) | |
| Trans Union, LLC, Providian National Bank, | ) | |
| and Sears Financial Corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DOCKETED**
DEC 0 1 2003

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On September 4, 2002, plaintiff Eva Buxton ("Buxton") filed a four-count complaint against defendants, one count against each defendant, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681–1681v. On September 30, 2003, defendant Providian National Bank ("Providian"), the only remaining defendant in this litigation, moved, pursuant to Federal Rule of Civil Procedure 56, for summary judgment. Based upon the undisputed material facts and for the reasons explained below, Providian's motion is granted.

1

## STATEMENT OF UNDISPUTED FACTS[1]

In March 2002, plaintiff Eva Buxton and her then-husband sought to obtain a mortgage for a home in southern California. In mid- to late-April 2002, the Buxtons met with Prime Source Mortgage loan officer Jim Hennekam ("Hennekam")[2] to discuss a pre-approved home loan and begin the qualification process. Around that same time, Buxton received a call from Lighthouse Credit Foundation ("Lighthouse"), a company that helps repair bad credit, regarding credit counseling.

---

[1] The Statement of Undisputed Facts is drawn from Providian's 56.1(a) statement of undisputed facts, Buxton's 56.1(b) response to statement of undisputed facts, Buxton's statement of additional undisputed facts, and Providian's responses thereto. Providian has moved to strike significant portions of Buxton's 56.1(b) response and statement of additional facts. In crafting the statement of undisputed facts and in reviewing the evidence in this case, this court has considered only admissible evidence which is supported by the record.

In addition, this court has noticed a troubling trend of counsel failing to comply with Local Rule 56.1, often necessitating, as in this case, needless motions to strike and responses and replies thereto, even when counsel are told no reply is necessary. (Nov. 13, 2002, Minute Order, Dkt. No. 51.) Local Rule 56.1 was intended to streamline the summary judgment process for the parties and the court, but it frequently has the opposite effect. Here, counsel, particularly plaintiff's counsel, are advised to read carefully Judge Castillo's opinion in Malec v. Sanford, 191 F.R.D. 581 (N.D. Ill. 2000), which explains Local Rule 56.1 in great detail. Although plaintiff's counsel's 56.1 submissions have fallen well below the mark, defendant's counsel's performance is far from exemplary. In particular, defendant's counsel, in their memorandum in support of summary judgment, cite directly to the record, as opposed to their 56.1(a) statement of facts. They have submitted exhibits both with their memorandum and 56.1 statement, unnecessarily complicating matters. The memorandum should contain citations *only* to the 56.1 statement of facts, which in turn cites to the relevant and material portions of the record attached to the statement. Malec, 191 F.R.D. at 586. Amazingly, as defendant's counsel cited to Malec in their motions to strike, presumably they read the case–apparently, however, not closely enough. Finally, defendant's counsel cite to an unpublished Seventh Circuit opinion, Dority v. City of Chicago, No. 01-3855, 2002 WL 31296431 (7th Cir. Oct. 9, 2002), (Def.'s Mot. to Strike Pl.'s 56.1(b)(3)(A) Resp. at 2), which is prohibited by Circuit Rule 53(b)(2)(iv)(a). Greater diligence from all counsel is expected.

[2] Providian states that the Prime Source loan officer's last name is "Hennekam." Buxton refers to him as "Hennekin." Although the affidavit, presumably prepared by Buxton's counsel, uses "Hennekin," the loan officer used "Hennekam" in the name block of his June 20, 2000, letter to Buxton. (Def.'s Stmt. of Facts, Ex. J.) Therefore, this court will refer to him as "Hennekam."

Buxton told the Lighthouse telemarketer that she was interested in credit counseling and that she wanted to review Lighthouse's literature. Buxton does not believe that she authorized Lighthouse to enter her into credit counseling; nevertheless, Lighthouse did in fact enroll Buxton in credit counseling. (Pl.'s Resp. to Def.'s Stmt. of Facts ¶ 6.)

Defendant Providian provides credit cards to consumers and is required to furnish information regarding these consumers to credit reporting agencies. The parties agree that Providian is a furnisher of information, not a credit reporting agency. On or about May 30, 2002, Providian received a letter from Lighthouse notifying Providian that Buxton had enrolled in credit counseling regarding her Providian Visa credit card.[3] Providian then, in the normal course of its reporting, furnished this information to credit reporting agencies. On June 5, 2002, based on the information it possessed, Providian first reported to credit reporting agencies that Buxton was enrolled in credit counseling.[4] As of that date, Providian had no information from anyone that Buxton was not enrolled in, or had withdrawn from, credit counseling. Thus, from Providian's standpoint, based on all available information supplied to it, the June 5, 2002, disclosure was accurate.

---

[3] For some reason this court cannot understand, Providian did not include a copy of this letter among Providian's summary judgment materials filed with the court. Buxton, however, attached the letter as part of exhibit C of her statement of additional facts. Although Buxton claims that she has insufficient information to respond to Providian's statement of facts paragraph 10, the letter makes it clear, and thus undisputed, that Providian received, on May 30, 2002, notice from Lighthouse that Buxton was enrolled in credit counseling.

[4] Although Buxton claims she has insufficient information to respond to the dates Providian provided her credit information, this is immaterial. It is undisputed that in both June and July 2002 Providian reported Buxton's Providian Visa account as being in credit counseling, and Buxton's credit reports of June and July reflected that she was in credit counseling. (Pl.'s Resp. to Def.'s Stmt. of Facts ¶ 22.)

3

In June 2002, Hennekam notified Buxton that her credit report reflected that she was enrolled in credit counseling, which could impact her ability to obtain a home loan. Buxton then contacted Lighthouse and asked to be removed from credit counseling. Lighthouse sent a letter to Buxton, dated June 21, 2002, indicating that Buxton had withdrawn from credit counseling. Despite the credit counseling notations on her credit report, on June 20, 2002, one day prior to the date of the letter from Lighthouse, the Buxtons were pre-approved for a $320,000 home loan.

On July 6, 2002, Providian again reported to credit reporting agencies that Buxton was enrolled in credit counseling. As of that date, Providian had received no information that Buxton had withdrawn from credit counseling. From its perspective, based on all information supplied to it, such report was accurate.[5] On July 8, 2002, Buxton contacted credit reporting agencies to file formal disputes regarding, among other things, the credit counseling notations on her credit report. Buxton first telephoned Providian regarding the credit counseling dispute on July 12, 2002.[6] On July 13, 2002, Providian received its first notice regarding this issue from a credit reporting agency, Trans Union.[7] Buxton wrote a letter to Providian dated July 9, 2002, explaining that she was no longer in

---

[5] Although Buxton contends that she has insufficient information to respond to paragraph 29 of Providian's statement of facts, Buxton has not pointed to any evidence that Providian received any notice of a dispute regarding credit counseling until July 12, 2002, at the earliest. Thus, it is undisputed that as of July 6, 2002, Providian had no notice that Buxton was not enrolled in credit counseling.

[6] Buxton claims in her materials that she attempted to call Providian on June 11 or 12, 2002. However, Buxton admitted as undisputed the first sentence of paragraph 28 of Providian's statement of facts, which states that Buxton's *first* attempt to call Providian was on July 12, 2002. Consequently, this date is taken as undisputed.

[7] Again, Buxton states that she has insufficient information to respond as to when Providian received information from Trans Union. This court cannot understand why Providian did not provide a copy of such notice. However, Buxton attached the Automated Consumer Dispute Verification form, which this court believes is the notice to which Providian refers, as

4

credit counseling and requesting verification of such from Providian. Buxton faxed this letter to Providian on July 15, 2002. Based on the July 12, 13, and 15, 2002, communications, Providian investigated Buxton's dispute. On July 16, 2002, Providian dropped Buxton from the debt management program and changed its internal notation regarding Buxton's account, showing that she had in fact withdrawn from credit counseling.[8] Later that month, on July 29, 2002, Providian processed an Automated Consumer Dispute Verification ("ACDV") from credit reporting agency Trans Union. Providian reported, after an investigation and based on the information it had before it at the time of the prior reports, that the previous monthly reports, which indicated that Buxton was enrolled in credit counseling, were accurate at the time they were furnished.

On August 7, 2002, Providian again furnished its regular monthly report of Buxton's credit information to credit reporting agencies. On that date, all references and notations that Buxton's Providian Visa card was being managed by credit counseling were forever removed. In fact, on August 11, 2002, Buxton herself ordered a credit report, which showed the Providian account as unblemished.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

part of exhibit C of her statement of additional facts. Nevertheless, this date is immaterial. It is undisputed that Providian first received notice on July 12, from Buxton herself, and investigated and corrected her credit information within thirty days of that date.

[8] Paragraph 32 of Providian's statement of facts is taken as undisputed. Buxton's citations to paragraphs 11–18 of her statement of additional facts do not contradict Providian's statement. In addition, Providian's internal records, attached to exhibit C of Buxton's statement of additional facts, reflect that on July 16, 2002, Buxton was no longer enrolled in credit counseling.

5

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovants must be believed and all justifiable inferences must be drawn in the nonmovants' favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat a motion for summary judgment; the nonmoving party must identify with reasonable particularity the evidence upon which that party relies. Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 898 (7th Cir. 2003); Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The evidence relied upon must be competent evidence of a type otherwise admissible at trial. Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002).

## ANALYSIS

Buxton concedes that the only issue before this court is whether Providian conducted a reasonable investigation in compliance with 15 U.S.C. § 1681s-2(b). (Pl.'s Mem. at 8-9.) This section requires a furnisher of information, such as Providian, after receiving notice from a consumer reporting agency, to conduct an investigation regarding the disputed information, review all relevant information provided by the credit reporting agency, report the results of the investigation to the credit reporting agency, and report the results to other credit reporting agencies if the original

information was incomplete or inaccurate. 15 U.S.C. §§ 1681s-2(b)(1)(A)-(D). The furnisher must complete all investigations, reviews, and reports within thirty days of receiving notice of the dispute from the credit reporting agency. 15 U.S.C. § 1681s-s(b)(2). In the case at hand, viewing the facts in the light most favorable to Buxton, the bottom line is that she got exactly what she was entitled to under the law: Providian was notified of an inaccuracy, investigated it, corrected it, and accurately reported to the credit reporting agencies the following month, all within thirty days of the initial notification of a dispute.

I.  Reasonableness of the Investigation

It is undisputed that July 12, 2002, was the first date Providian became aware of any dispute regarding Buxton's account. Then, on July 13, 2002, Providian received a notice of dispute from Trans Union, and on July 15, 2002, Buxton faxed information to Providian. After receiving and reviewing the above information, Providian investigated the dispute and confirmed that Buxton had withdrawn[9] from credit counseling. On July 16, 2002, Providian updated its internal records by removing the credit counseling notations from Buxton's account. On August 7, 2002, when Providian reported Buxton's account to credit reporting agencies as part of its regular reporting cycle, the credit counseling notations had been removed. From that date forward, Buxton's Providian Visa account does not reflect that it is in credit counseling. Accordingly, Providian completed its required investigation (§ 1681s-2(b)(1)(A)), review (§ 1681s-2(b)(1)(B)), and report

---

[9] Although Buxton personally may never have enrolled in credit counseling, from the perspective of Providian, she had. It is undisputed that Lighthouse enrolled her in credit counseling. If Buxton was unwittingly enrolled in credit counseling, she should seek relief from Lighthouse. As of July 16, 2002, the only information Providian had was that Buxton had withdrawn from credit counseling.

7

(§ 1681s-2(b)(1)(C), (D)) within thirty days (§ 1681s-2(b)(2)) of July 12, 2002.[10] This is all the law requires.

In addition, the information Providian furnished in June and July 2002 was accurate at the time it was reported. In June and July 2002, Providian had no information that Buxton's Providian Visa account was no longer enrolled in credit counseling; thus, the information furnished to the credit reporting agencies was accurate at those times. When Providian reported on Buxton's account in August 2002, after learning and verifying that Buxton had withdrawn from credit counseling, the report did not reflect that Buxton was in credit counseling.

Finally, Buxton argues that material facts are in dispute as to whether Providian's investigation was reasonable, citing primarily to an Eastern District of Missouri case, Bruce v. First U.S.A. Bank, Nat'l Ass'n, 103 F. Supp. 2d 1135 (E.D. Mo. 2000). She argues that by failing to contact her, Lighthouse, or anyone outside the company, Providian failed to conduct a reasonable investigation. In some circumstances, like Bruce, Buxton may be correct. However, here, Providian did not need to do these things. Unlike Bruce, where the furnisher rejected the consumer's dispute and continued reporting the disputed information as accurate, Bruce, 103 F. Supp. 2d at 1139, 1141, 1143-44, upon receipt of a call and letter from Buxton and notice from Trans Union, Providian accepted Buxton's position, changed its records to reflect that Buxton was no longer enrolled in credit counseling, and reported this fact to credit reporting agencies on August 7, 2002.[11] Thus,

---

[10] Because it is not clear that the ACDV from Trans Union is the July 13, 2002, notice at issue, this court has used July 12, 2002, as the operative date on which Providian received notice of a dispute.

[11] The two other cases to which Buxton cites, Dalton v. Capital Associated Indus., Inc., 257 F.3d 409, 415 (4th Cir. 2001), and Cushman v. Trans Union Corp., 115 F.3d 220, 221 (3d Cir. 1997), are distinguishable because they involve credit reporting agencies, not furnishers of

8

Buxton got exactly what she wanted. The FCRA does not mandate that in every case a furnisher of information like Providian conduct the level of investigation Buxton suggests. Although the determination of reasonableness is usually a factual question for the jury even when underlying facts are undisputed, Providian's reasonableness in this case is beyond question; therefore, summary judgment in its favor is appropriate. Crabill v. Trans Union, L.L.C., 259 F.3d 662, 664 (7th Cir. 2001).

II. ACDV Response

Buxton also claims that Providian violated § 1681s-2(b) when it verified Buxton's June and July 2002 credit reports in response to the ACDV. Buxton, however, misses the point. In verifying the information, Providian was not saying that Buxton's account was still in credit counseling as of July 29, 2002. Rather, after review of the ACDV and all information it possessed, Providian believed the information provided to the credit reporting agencies in previous monthly reports, particularly June and July, was accurate at the time it was furnished. The undisputed facts show that on June 5 and July 6, 2002, based on all the information before it, namely the May 17, 2002, letter from Lighthouse, Buxton was enrolled in credit counseling. Therefore, Providian did not supply misleading information when it verified the ACDV. Further, Providian had no obligation to inform the credit reporting agencies on July 16, 2002, or even July 29, 2002, that it had updated its records to reflect that Buxton was not enrolled in credit counseling. All that is required is that the furnisher conduct its investigation and report within thirty days, which Providian did. Finally, even if the ACDV response was incorrect, Providian reported Buxton's account status to credit reporting

---

information.

agencies accurately on August 7, 2002, within the thirty-day period. Accordingly, the undisputed facts show that Providian's actions were reasonable.

III.  Damages

To obtain an award of actual damages under 15 U.S.C. §§ 1681o or 1681n, Buxton must show a causal connection between Providian's alleged FCRA violation and her denial or loss of credit. Crabill, 259 F.3d at 664. Here, it is undisputed that Buxton received a $320,000 home loan. In fact, Buxton was approved for this loan by letter dated June 20, 2002 (Def.'s Stmt. of Facts, Ex. J), well before her credit records were reported on August 7, 2002, and even before Lighthouse ever sent her the letter dated June 21, 2002, indicating that she had withdrawn from credit counseling (Def.'s Stmt. of Facts, Ex. B). Therefore, although Hennekam states in his affidavit that "the fact that a person has an account in credit counseling will cause a mortgage application to fail. That mark alone will cause a rejection" (Pl.'s Stmt. of Add'l Facts, Ex. E ¶ 6), Buxton's credit counseling "mark" did not cause her mortgage application to fail. Buxton essentially concedes this point, as well as Providian's argument that she did not suffer cognizable emotional distress, as she fails in her response memorandum to address the issue of actual damages except in a most cursory way.

Instead, Buxton claims that she is entitled to statutory damages of "not less than $100 and not more than $1,000 . . . ." 15 U.S.C. § 1681n(a)(1)(A). This subsection provides in full:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; . . .
> (2) such amount of punitive damages as the court may allow; and
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

10

15 U.S.C. § 1681n(a). Buxton is correct that "[a] showing of malice or evil motive is not required to prove willfulness under the Act. The plaintiff must only show that the defendant 'knowingly and intentionally committed an act in conscious disregard for the rights' of the consumer." Dalton, 257 F.3d at 418 (citations omitted). In the case at hand, Buxton has produced no evidence showing that Providian knowingly and intentionally committed any act in conscious disregard of Buxton's rights. In fact, Providian did not violate the FCRA at all. Upon receiving information that its records may not be accurate, Providian properly conducted an investigation, changed its records, and reported the updated information accurately to credit reporting agencies, all within thirty days. It reported, in response to an ACDV, that at the time of its prior monthly reports, the information provided was accurate. Providian had no need, let alone a legal obligation, to conduct a more thorough investigation. Buxton got exactly what she wanted. Because there is no evidence of willfulness on the part of Providian, Buxton is not entitled to damages under the FCRA (and her attorneys cannot recover attorneys' fees). See Crabill, 259 F.3d at 667 (holding that following Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources, 532 U.S. 598 (2001) and Bryant v. TRW, Inc., 689 F.2d 72 (6th Cir. 1982), "a plaintiff must obtain formal judicial relief, and not merely 'success,' in order to be deemed a prevailing or successful party under any attorneys' fee provisions comparable to the civil rights attorneys' fee statute [such as the FCRA]").

## CONCLUSION

For all of the reasons stated above, defendant Providian National Bank's motion for summary judgment is granted. This action is dismissed in its entirety. Any pending motions are moot.

ENTER:

*[signature: James F. Holderman]*
JAMES F. HOLDERMAN
United States District Judge

DATE: November 26, 2003